(Decided March 27th, 1861.)

---

## James Whiteford *vs.* John H. Munroe.

Prayers, that if the jury find, from the evidence, that the note sued on "*is mentioned in said deed*," and "*was intended to be secured by said deed*," are erroneous, because they submit the construction of the deed to the *jury*, when it ought to have been decided by the *court*.

A deed of trust executed by H. to secure M. and B. for their liabilities on certain notes, describes one of such notes as a note dated 20th of July 1857, *drawn* by H., *endorsed* by B. and M., and payable at the Merchants Bank of Baltimore. Held:

That a *joint* and *several* note for the same amount, payable at the same bank, *dated the 29th of July* 1857, drawn by *H. and M.* in favor of and endorsed by B., is not so nearly within this description as to render the, deed operative as to it.

A deed of trust was executed by H., to secure M. and B. for their liabilities on certain *specified* notes, and also on "*any other notes, if any there be*

Whiteford *vs.* Munroe.

upon which said M. and B., or either of them, may have become liable for said H. HELD:

That these general provisions cannot be construed so to include *notes* not particularly *specified*, on which M.'s name appears, as to make the deed itself any evidence of a recognition by M. of his *liability* upon such notes.

In order to bind one of two alleged joint makers of a note, where the payee's endorsement is not genuine, in a suit by the holder of the note against such maker, it is necessary to show that the defendant's name was signed by his authority or sanction, and also that the payee's name was endorsed thereon with the defendant's knowledge and consent.

In order to enable a holder to recover against one of two alleged joint makers of a note, it must be shown that the defendant's signature is genuine, or was authorized to be signed, or sanctioned by him after it was signed, and that the payee's endorsement thereon is his genuine endorsement.

In a suit by the holder against the maker, the endorser is a competent witness for the defendant, because though his testimony may defeat the action and discharge the maker, he may, nevertheless, be liable on the endorsement, and lose the benefit of the judgment against the maker.

A deed of trust was executed by H., to secure M. and B. for their liabilities on certain notes. A suit was brought against M. by the holder of notes purporting to be drawn by H. and M. in favor of B., and by him endorsed, and B. was offered as a witness for the defendant. HELD:

That B. had no such interest in the trust fund created by this deed as to disqualify him as a witness, for the deed conveys the property of H., and though M. may escape liability on the notes in suit, it does not follow that the fund would be released from those notes as debts of H.

A party cannot be held liable upon paper on which his name has been *forged*, merely because he may have paid, without objection, other notes forged by the same person.

APPEAL from the Circuit Court for Prince George's county.

*Action*, brought on the 15th of December 1857, by the appellant against the appellee, on two joint and several promissory notes, purporting to be drawn by Geo. W. Harrison and the defendant, John H. Munroe, in favor of James M. Benton, or order, and by him endorsed, negotiable and payable at the Merchants Bank of Baltimore, one for $750, dated July 29th, 1857, and the other for $450, dated September 21st, 1857, each at sixty days. The defendant pleaded that he did not promise as alleged, and payment.

Whiteford *vs.* Munroe.

A commission was issued to Alexandria, under which the testimony of five witnesses, including James M. Benton, the alleged endorser of said notes, was taken and returned. These witnesses prove, substantially, that the defendant, Munroe, was the brother-in-law of Harrison, and that Benton married the sister of Harrison's wife; that some time prior to and at the date of said notes, Harrison was a merchant in Alexandria, and so continued until the latter part of 1857, or early in 1858, when he quit business and fled, to avoid arrest on a charge of forgery; that the body of said notes and the names of Harrison *as well as that of Munroe*, thereto signed, are in the handwriting of Harrison; that prior to and about the date of said notes, Harrison had issued a large number of notes with the names of Munroe and Benton attached thereto, as drawers or endorsers, upon many of which the name of Munroe was signed or endorsed by Harrison, and that he (Munroe) knew that his name had been so used by Harrison on some of such notes, and at first admitted or did not deny, but afterwards did deny the genuineness of his signatures thereto, and his liability thereon; some of them, however, were paid or satisfied by him. The witnesses do not prove any express authority given by Munroe to Harrison to sign his name; most of them say they know nothing of any such authority; one of them, however, states that he often heard Harrison say, after a warrant was issued for his arrest, that he had Munroe's consent to use his name.

The deed of trust referred to by the witnesses, and offered in evidence in the course of the trial, is dated the 9th of January 1858, and is between George W. Harrison, of the first part, and David Funsten, of the second part. The following parts of it only need be stated. It recites:

"Whereas the said Harrison is indebted to sundry persons, who hold as evidence of such indebtedness, in great part, notes and drafts drawn by himself, endorsed by others for his accommodation, or drawn by others and loaned to him for his use, or upon which others are in some way bound or liable, for his benefit, and he desires to secure the payment of said indebtedness, and at the same time to protect and save harm-

18    v.17

Whiteford *vs.* Munroe.

less from all losses, costs and damages whatsoever, those so bound or liable with or for him, as aforesaid, or otherwise."

It then conveys certain specified real and personal property of the grantor, Harrison, all his stock in trade and merchandize, and all accounts and debts due him, to the said Funsten; "*in trust,* however, for the following purposes, and none other; that is to, say, to convert the said property into cash, with all convenient despatch, and as speedily as may be, without unreasonable sacrifice, and to apply the money so arising to the payment of the notes, drafts, &c., following." Then follows an enumeration and specification of certain notes and drafts, from No. 1 to 24, one of which only it is necessary to state, viz: "No. 17, note dated 20th July 1857, drawn by said Harrison, endorsed by said Benton and Munroe, and payable at the Merchants Bank of Baltimore, for $750." The deed then proceeds:

"And to secure, also, any note or notes, or drafts which may be given in renewal of any of the notes or drafts heretofore described, whether such renewal be in whole or in part; upon all of which said notes and drafts heretofore described, the said James M. Benton, John H. Munroe and Elizabeth Harrison have become and are liable, whether as drawers, endorsers or otherwise, solely for the use of the said George W. Harrison, and which said notes and drafts the said George W. Harrison has used and negotiated." It then directs the trustee to apply the fund to pay *in full* said notes and drafts, from No. 1 to No. 17, inclusive, in the order in which they stand, and then *pro rata* to the others, Nos. 18 to 24, inclusive, "and of any other notes or drafts, if any there be, and the same be timely brought to the notice of said trustee, upon which the said Benton and Munroe, and the said Elizabeth Harrison, or either of them, may have become liable for his, the said G. W. Harrison's, accommodation, such payments of the notes, from 18 to 24, (inclusive of both,) and the other notes last aforesaid, if any there be, to be applied without preference or priority." Then, at the close of the deed, is the following provision:

"And whereas it is possible that in the description of the

notes and drafts hereinbefore given, some minor inaccuracies may have occurred, in dates, amounts, or otherwise, the said trustee is, nevertheless, to apply the said fund in the manner hereinbefore indicated, whenever, notwithstanding such inaccuracies, if any there be, the correspondence between the said description and the said notes and drafts is sufficient to establish or satisfy him of their identity.''

1*st Exception.* The plaintiff offered to prove that the signature of Harrison to the $750 note mentioned in the declaration, is in his proper handwriting, and further offered to prove that the deed from said Harrison to Funsten (which is then set out in the exception) was procured by the defendant, Munroe, for the purpose of securing him for his liability as a security of Harrison, and then asked the court to instruct the jury:—That if they find, from the evidence, that the said deed was procured to be executed by the defendant, to secure him for his liability upon said notes mentioned in the deed, and that the defendant admitted that the said security was sufficient to secure him fully for said liabilities, and that said note sued on is mentioned in said deed, then that said deed is evidence of his liability as one of the signers of said note. But the court (CRAIN, J.) refused to give this instruction, and to this refusal the plaintiff excepted.

2*nd Exception.* After the proof offered in the preceding exception, made part of this, the plaintiff, further to prove that the signature of Munroe to said $750 note is in the handwriting of Harrison, the other party thereto, and for the purpose of showing the authority of Harrison to sign the name of Munroe, or the ratification by Munroe of the said signature of his name, offered in evidence the aforesaid deed from Harrison to Funsten, and the aforesaid proof that said deed was procured to be executed by said Munroe, to secure him from liabilities as security for Harrison, and that he, Munroe, had admitted that said security was ample for such purpose, and then asked the court to instruct the jury that if they should believe, from the evidence, all the facts above enumerated, then that the same are evidence to be weighed by them of the ratification by Munroe of the said signature of

his name by the said Harrison upon said note for $750. This instruction the court refused to give, and to this ruling the plaintiff excepted.

*3rd Exception.* After the evidence in the preceding exceptions, made part of this, the plaintiff proved that the defendant was the brother-in-law of Harrison, and that Harrison, for many years prior to and at the time of the execution of said note, was engaged in merchandize in Alexandria, Va., and then offered in evidence the testimony taken under the commission to Alexandria, heretofore stated, and then asked the court to instruct the jury that if they should believe, from the evidence, that Munroe was in the habit of recognizing his liability upon notes where his name was signed by Harrison, and that he procured said deed to be executed to secure his liability for such signatures of his name by Harrison, and admitted its sufficiency fully to indemnify him for all notes mentioned in the deed, and shall further believe that the note for $750 was intended to be secured by said deed, then that such evidence is to be weighed by the jury as evidence of the defendant's ratification of the said signature of his name to said note. Which instruction, as asked, the court refused to give, and to this ruling the plaintiff excepted.

*4th Exception.* After the evidence in the preceding exceptions, made part of this, the plaintiff proved, by a competent witness, that he did not know whether the signature of Benton, as endorsed on said note for $750, was genuine or not, although he would say, from his knowledge of his handwriting, having seen him write, it was genuine, were it not for the transaction detailed by him in his answer under the commission, but if he were now permitted to state his belief, it is that the endorsement is in the handwriting of Harrison, and then asked the court to instruct the jury:

1st. That if, from the above evidence, or from the recitals of said deed, they should believe that this note is endorsed in the genuine handwriting of Benton, and that Harrison was authorized by the defendant, Munroe, to sign his name to it, then that the plaintiff is entitled to recover.

2nd. That if the jury should believe, from the evidence,

that the name of Munroe was signed to said note by Harrison, with the authority of Munroe, then that the plaintiff, by reason of the deed and other proof, is entitled to recover of Munroe, although they may believe that the signature of Benton, on the back of said note, was signed by Harrison.

The court refused these instructions, but instructed the jury that, to enable the plaintiff to recover in this action, they must find, from the evidence in the cause, that the signature of Munroe was his genuine signature, or that Harrison was authorized by Munroe to sign said note, or sanctioned the same after it was signed, and that they must further find, from the evidence in the cause, that the endorsement on said note was the genuine endorsement of Benton, the payee in said note. To which refusal to give his instructions as asked, and to the instruction as given by the court, the plaintiff excepted.

*5th Exception.* After the evidence offered in the preceding exceptions, made part of this, the plaintiff offered to read in evidence the proof taken under the commission filed in this case, except the proof of Benton, whose name is endorsed on said note, the plaintiff objecting to the competency of said Benton as a witness, because of his interest under the deed of trust, he having aided Munroe in procuring said deed, but the court overruled the plaintiff's objection to the competency of Benton as a witness, and to this ruling the plaintiff excepted.

*6th Exception.* Upon the evidence contained in the preceding exceptions, made part of this, the plaintiff further prayed the court to instruct the jury that if they believe, from the evidence, that Harrison signed the name of the defendant to the two notes sued upon in this case, or either of them, by his authority, and further find, from the evidence, that Harrison executed the said deed of trust to Funsten, at the joint request and procurement of the defendant and Benton, and that Benton had no interest in said notes, or either of them, and was not intended to be made a party to the transaction, but that the insertion of his name as payee in said notes by Harrison, was without the authority of Benton, then that the plaintiff is entitled to recover, although they shall find that

the endorsement of the name of Benton upon said notes was not genuine, which instruction, as asked, the court refused to give, and to this ruling the plaintiff excepted.

*7th Exception.* Upon the evidence contained in the preceding exceptions, made part of this, the plaintiff prayed the court to instruct the jury that if they should believe, from the evidence, that the notes sued on in this case, or either of them, were signed by Harrison, and that the name of Munroe was thereon signed by Harrison, by authority of Munroe, and were put in circulation by the drawers, or either of them, bearing a forged endorsement of the payee in said notes, then that the plaintiff is entitled to recover on the note so signed and put in circulation. Which instruction the court refused to give, and to this ruling the plaintiff excepted.

*8th Exception.* Upon the evidence contained in the preceding exceptions, made part of this, the plaintiff further prayed the court to instruct the jury that if they shall believe, from the evidence, that the defendant, Munroe, had, on previous occasions, paid notes on which his name had been signed by Harrison, which signatures were forged, without objecting to them, that such evidence is proper to be weighed by them, and, if believed by the jury, they may find for the plaintiff. Which instruction, as asked, the court refused to give, and to this ruling the plaintiff excepted, and the verdict and judgment being in favor of the defendant, the plaintiff appealed.

The cause was argued before LE GRAND, C. J., TUCK, BARTOL and GOLDSBOROUGH, J.

*C. C. Magruder* and *Thos. G. Pratt,* for the appellant:

1st. The deed of trust specifies and describes the $750 note with sufficient accuracy to embrace it. This deed was made to secure Benton, Munroe and Elizabeth Harrison for their *liabilities* on notes and drafts, which Geo. W. Harrison, the grantor, had used and negotiated—*they* are the only *cestui que trusts* for whose benefit the deed was made. Now the note specially described as No. 17, is for the *same*

amount, and payable at the *same* bank as the $750 note
sued on, and the *same* parties are *liable* upon it.   The only
difference is, that the *date* of the one is the 20th of July, and
of the other the 29th of July, of the *same year*, and in the
one Harrison *alone* is the drawer, while Benton and Munroe
are endorsers, in the other, Harrison and Munroe are *joint*
drawers and Benton is endorser.   The *same parties*, how-
ever, are *liable* in each case, and when we consider that the
deed provides for any notes which may be given in *renewal*
of those specially described, and also for *minor inaccuracies*
in *dates*, amounts, or *otherwise*, it is submitted that this note
comes directly within the terms of the deed:—that, in the
words of the deed, "the correspondence between the note
*described* and this note, is sufficient to *establish* their *identi-
ty.*"   Again, the deed not only secures these parties for
*liability* on the notes specially described, but for *all other lia-
bilities* on *other notes*:—"any *other notes* or *drafts*, if any
there be," upon which the said parties or either of them
*"may have become liable"* for Harrison's accommodation.
The proof, moreover, shows that the execution of the deed
was *procured* from Harrison *by the defendant*, to secure him
as surety upon these notes, and that he admitted that the
security was ample for such purpose, and this *estops* him
from denying his signature as joint drawer with Harrison of
the note in controversy.   He gets this deed from Harrison of
all his property, for the purpose of securing his liability of
these notes, which he *insists were forged;* he *takes* the secu-
rity, and this is a *sufficient* admission of Harrison's *authority*
to sign his name; he is *estopped* from denying his liability;
it makes that *legitimate* which was before illegitimate.   The
same doctrine of estoppel, upon the hypothesis of the *sixth*
exception, is equally applicable to Benton, even assuming
him to have been intended by the drawers as the *real payee*,
for whose benefit the note was given.   If these views are cor-
rect, then, it is submitted, the deed was evidence of the de-
fendant's liability as one of the signers of the $750 note, or,
in connection with the other proof, was evidence to be
weighed by the jury, of the *ratification* by Munroe of the

signatures of his name by Harrison, and the rulings of the court below, in the *first, second, third* and *sixth* exceptions were erroneous. For authorities on this point see 1 *Greenlf's Ev.*, secs. 22 207. 9 *G. & J.*, 47, *Duvall vs. Farmers Bank.* 8 *Gill*, 251, *Alexander vs. Walter.* 2 *G. & J.*, 296, *Keplinger vs. Griffith.* 3 *Md. Rep.*, 291, *Lewis vs. Kramer.* 1 *Wilson*, 257, *Hanson vs. Parker.* 33 *Eng. C. L. Rep.*, 115, 117, *Pickard vs. Sears.* 8 *Eng. C. L. Rep.*, 239, *Harrison vs. Valence.* 7 *East.*, 231, *Lundie vs. Robertson.* 4 *Md. Rep.*, 498, *Marshall vs. Haney.* 3 *Md. Rep.*, 67, *Stewart vs. Redditt.* 7 *G. & J.*, 20, *Cole vs. Hebb.* 6 *G. & J.*, 481, *Goodhand vs. Benton.* 7 *H. & J.*, 36, *Davis vs. Davis.* 7 *Humph.*, 224, *Fitzpatrick vs. School Commissioners.*

2nd. Benton was an incompetent witness, because of his interest in the fund created by the deed of trust. The deed describes Benton as security on the notes specified, and if he could get rid of *any one* of them, as was the effect of his testimony, it would increase the fund applicable to *the others.* It is submitted, therefore, that he was incompetent on the ground of interest, and that the ruling of the court below in the *fifth* exception was erroneous. 1 *Greenlf's Ev.*, sec. 392, and cases referred to in *notes* thereto. 8 *Gill*, 138, *Smith vs. Morgan.*

3rd. But in this case the *payee*, Benton, had, in fact, no *interest* in the notes sued on, and he was not *injured* by the transfer. The forgery of his name does not affect the liability of the *maker*, and where the payee has no interest in the note, the principle, that the holder cannot make title through a forgery, does not apply. The drawer of a note payable to a fictitious person, is liable to the holder of the note to whom it is passed; it will be considered as a note payable to bearer. The drawer of a note, where the payee's named *is forged*, will be liable to the holder if the forged endorsement was on the note when passed by the drawer *to* the holder. So where the payee named in the note has no interest in it, or where it was not intended he should endorse or have any thing to do with it, the same principle applies, and the

Whiteford *vs.* Munroe.

drawer is liable precisely as if the note were payable to bearer. Proof of the payee's endorsement is not necessary where the maker of a note makes it payable to a fictitious person, or to a real person and forges his endorsement or procures it to be done, and then puts it in circulation. For these reasons it is submitted, the rulings in the *fourth, sixth* and *seventh* exceptions were erroneous. See 1 *H. Bl. Rep.*, 321, *Collis vs. Emett.* 2 *Yeates*, 480, *Hunter vs. Blodgett.* 21 *Eng. C. L. Rep.*, 116, *Cooper vs. Meyer.* 3 *Hill S. C. Rep.*, 227, *Meacher vs. Fort.* 1 *Comstock*, 118, *Coghill vs. Amer. Exchange Bank.* 2 *New Hamp.*, 446, *Foster vs. Shattuck.* 11 *How.*, 184, *Hortzman vs. Henshaw.* 2 *Rob. Prac.*, 161, 162, 163. 2 *Gill*, 343, *Gist vs. Drakely.* 1 *H. Bl. Rep.*, 569, 589, 591, *Gibson vs. Minet.*

4th. The fact established by the proof in the case, that Harrison was in the habit of signing the name of Munroe to notes, as joint drawer with himself, or as endorser upon notes drawn by him, and putting the same in circulation, which fact was known to Munroe, was evidence to go to the jury from which they might find his, Munroe's, assent to his name being placed on these notes by Harrison. The opposite position would operate as a fraud upon all persons taking such notes upon the implied liability of Munroe. The ruling, therefore, in the *eighth* exception was erroneous. *Bailey on Bills*, (2 *Am. Ed.*,) 505. 3 *Esp.*, 60, *Barber vs. Gingell.* 3 *Day*, 491, *Hartford Bank vs. Hart.* 2 *H. Bl. Rep.*, 288, *Gibson vs. Hunter.* 10 *Wend.*, 403, *Weed vs. Carpenter.* 2 *Kent*, 477, 480.

*Thos. F. Bowie*, for the appellee:

1st. There are fatal objections to many of the *prayers* on the part of the appellant, because of their *assuming facts* which should have been left to the jury to find, because of there being *no evidence* upon which to base them, and because they submit *questions of law* to the jury. The prayer in the *first* exceptions *assumes* that Munroe was *one of the signers* of the $750 note, and this, as well as the prayer in the third exception, leaves to the jury the *construction of the*

19    v.17

*deed* which was a *question of law*, to be decided by the court. These prayers also, as well as those in the *second, fourth, sixth* and *seventh* exceptions, are defective, because there was no evidence to support them, but on the contrary, were in direct conflict with the evidence. 11 *G. & J.*, 367, *Abell vs. Harris. Ibid.,* 472, *Ragan vs. Gaither.* 4 *Md. Rep.,* 498, *Marshall vs. Haney.*

2nd. The deed of trust does not show *upon its face,* that either of the notes sued on was included in it, and there is no *parol evidence* even to show that it does. The variance between the description of note No. 17, in the deed, and the $750 note sued on, is too broad to admit of reconcilement. The *dates* are different, and the liabilities of the parties are *different.* In the one, Munroe was liable only as *endorser,* while in the other he is sought to be made liable as *joint maker.* These discrepancies are *fatal;* the two notes are not the same; their *identity* is not established. The court could not, therefore, leave it to the jury to find that this $750 note was *mentioned in the deed,* or intended to be secured by it. Nor is there any thing in the general provisions of the deed which can make it evidence in this case:—a deed executed by Harrison to indemnify Munroe, on *genuine* endorsements, is no evidence of the latters recognition of *forged* endorsements or signatures.

3rd. Benton was a competent witness. He had no interest in the suit, and there is no evidence that he had anything to do with procuring the deed. But even if he had, the fund is not, or at least, may not be discharged from the payment of these notes. Besides, the appellant had himself offered in evidence *all* the testimony taken under the commission, including that of Benton, and it was too late for him, afterwards, to object to his competency on the ground of interest.

4th. The rulings in the *fourth, sixth* and *seventh* exceptions raise, the question, whether title can be made to a note by the holder through a *forged* endorsement? It is submitted, that the law upon this subject, and as applicable to this case, is correctly stated in the court's instruction in the *fourth* exception, viz: That to entitle the plaintiff to recover

he must prove Munroe's signature to have been genuine, or that he authorised Harrison to sign his name, or sanctioned such signature, and *that* the endorsement of Benton, the payee, was his *genuine endorsement*. The present case is distinguishable from all those cited on the other side, on this point, which were cases of *contract* or *agreement* in reference to the endorsement, at the time the notes were made and put in circulation. Here there is no proof of such an agreement, and this being so, the payee is supposed to be the *owner* of the note, and to have passed it over to the holder for value, and in such a case his endorsement must be proved, and if it be a *forgery* the holder cannot recover. 7 *G. & J.*, 468, *Lancaster vs. Baltzell.* 9 *G. & J.*, 342, 361, *Key vs. Knott & Wife.*

5th. The ruling in the *third* and *eighth* exceptions was also correct. There was no evidence of any *general* authority given by Munroe to Harrison to sign his name to notes, nor that Munroe was *in the habit* of recognizing his liability upon, or *paying* notes so signed and put in circulation by Harrison. But even if he had previously paid *forged notes* without objection, it is no reason why he should be held liable on *these*, nor was his habit, even if proved, of endorsing notes for Harrison, and recognizing his liability on notes so endorsed, any reason why he should be obliged to pay notes that were forgeries in fact.

GOLDSBOROUGH, J., delivered the opinion of this court.

The appellant instituted this suit in the circuit court for Prince George's county, against the appellee, as the joint drawer, with one George W. Harrison, of two promissory notes, one dated the 29th day of July 1857, for $750, and the other dated the 21st day of September 1857, for $450, payable respectively sixty days after date, to the order of James M. Benton, negotiable and payable at the Merchants Bank of Baltimore, with the name of James M. Benton endorsed on them, and passed to the appellant by Harrison.

The appellee pleaded that he did not promise as alleged, and payment, and these pleas were put in issue by the replication of the appellant.

Whiteford vs. Munroe.

At the instance of the appellant, a commission to take testimony was issued and directed to two commissioners in Alexandria, Virginia; the commission was executed, and the testimony taken thereunder returned to the court from whence it issued.

At the trial of the cause, the appellant took eight exceptions to the rulings of the court below, and the verdict and judgment being against him, he appealed to this court.

We approve of the ruling of the court on the prayer of the plaintiff in the first exception, because by this prayer, the construction of the deed referred to, is submitted to the jury, when it ought to have been decided by the court.

The court was also right in rejecting the prayer in the second exception; because, though the construction of the deed is reserved to the court, we find no sufficient identification of the notes, for the amount of which the suit was brought. The note for $750, it was urged by the appellant's counsel, was so nearly described by No. 17 in the deed, as to render the deed operative as to that note. But we cannot concur in this view. The note sued on is a joint and several note, signed by Harrison and Munroe and payable to Benton, dated the 29th of July 1857. The note referred to in the deed is a note dated the 20th July 1857, drawn by Harrison, and endorsed by Benton and Munroe. And it will not be contended, that if suit were brought for such a note, the note in the plaintiff's nar. could be given in evidence to support it. The second note for $450, part of the appellant's cause of action, is nowhere, in terms, mentioned in the deed; and although the general provisions might entitle the holder of these notes to participate in the fund, (upon which, however, we mean to express no opinion,) yet they cannot be construed so to include these notes, as to make the deed itself any evidence of a recognition by Munroe, of his liability upon them.

The prayer in the *third* exception is liable to the same objection as that in the first, and, for the same reason, the court was right in rejecting it.

The *first* prayer in the *fourth* exception was properly refused, because there is no evidence to sustain the theory of it.

The *second* prayer in the same exception could not be granted, because, assuming as it does, that Benton's endorsement is not genuine, then, in order to bind Munroe, it was necessary to find, not only that his name was signed by his authority or sanction, but also that Benton's name was endorsed with Munroe's knowledge and consent, of which, the record furnishes no evidence. We are of opinion, that the appellant cannot complain of the instruction granted by the circuit court, as set forth in this exception. It afforded him an opportunity to introduce the evidence which would enable him to recover, if the case admitted of such proof.

We approve of the court's ruling, contained in the *fifth* exception—we can see no objection to the admissibility of Benton's evidence. An endorser, when offered as a witness by the maker, is competent, because, although his testimony may defeat the action, and discharge the defendant, he might, nevertheless, be liable on the endorsement, and would lose the benefit of the judgment against the maker, to whom he would have a right to look for reimbursement. And, as to *his supposed interest* in the trust funds, it must be remembered, that the deed conveys the property of Harrison, and although Munroe may escape this liability, it does not follow that the fund would be released from these notes as debts of Harrison.

We also concur with the court below in rejecting the prayers of the appellant in the *sixth* and *seventh* exceptions, there being no evidence to show the complicity of the appellee in placing the name of Benton, as endorser on the notes, in this suit.

The prayer in the *eighth* exception was, in our opinion, properly overruled. This part of the case was argued as if it presented a question of implied authority; but that is not the point of the prayer. A party cannot be held liable upon paper, on which his name has been *forged*, merely because he may have paid other forged notes without objection.

*Judgment affirmed.*

(Decided March 27th, 1861.)