# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

## DISTRICT OF COLUMBIA.

---

### OFENSTEIN *v.* BRYAN.

---

BILLS AND NOTES, ALTERATION OF; EVIDENCE; BURDEN OF PROOF; RATIFICATION; ORDER OF PROOF.

1. Whatever may be the rule with respect of the admission in evidence of altered deeds, the rule with respect of negotiable instruments is, that where the alteration is material and is such as reasonably to excite suspicion, the burden is upon the party offering such an instrument to explain its condition.

2. Whether the alteration of a negotiable instrument is of such a suspicious character as calls for explanatory evidence on the part of the party offering it, is a question of law for the court to determine; but when it has been admitted after some such proof has been given, the question whether the alteration was made before or after delivery, or with or without the consent of the parties to the instrument is one for the jury.

3. Where in an action on a promissory note which, after proof of its execution, the trial court refuses to admit in evidence until certain alterations of it shall be explained, the plaintiff offers evidence tending to show that the note has not been altered since its receipt by him, which was on the day of its date or the day thereafter, it is error for the trial court to direct a verdict in favor of two of the parties to the note, although in view of its

OFENSTEIN *v.* BRYAN

condition when exhibited at the trial, and the conceded fact that one of the other parties to the note had criminally altered similar notes relating to the same transaction in which the note in suit was given, renders the plaintiff's evidence very improbable.

4. Material alteration of a promissory note after it has been signed by the parties, will discharge them, when made without their knowledge, notwithstanding the holder proves · that it was not altered after its receipt by him.

5. In a suit by the holder of a materially altered promissory note against the parties thereto, evidence of previous financial transactions between one of the makers, who is claimed to have altered the note, and the other parties to the note is admissible only as the foundation for other evidence tending to show that authority had been given to such maker by the other parties to alter the note, or that, with knowledge of the alteration, they had admitted its genuineness and promised to pay it to the holder.

6. In such an action, the fact that a meeting had been attended by the parties to the note in suit other than the one whom they claimed had altered it, with a view to arranging for the payment of other notes claimed to have been altered by the same party, is not relevant, unless as a necessary introduction to admissions made by the defendants in the course thereof, of authority to make the alteration, or that such had been made with their knowledge and consent.

7. Confessions of one of the parties to the note, in such an action, that he had altered other notes relating to the same transaction for which the note in suit was given, are inadmissible on behalf of the other defendants unless made so by other evidence in the case.

8. While one with whom another leaves a note which he has signed but left blank, may fill up such blanks and so bind the other, he may not make a new instrument by erasing or interlining material words so as to change the terms of the words written or printed in the blank form; nor may he after having filled the blanks in such a note and used it, subsequently, upon recovering the note, erase material words and substitute and interline others; and either of such acts will be fatal to the validity of the note, when it is in the hands of an innocent holder.

9. Where, in an action on a promissory note, it is sought to be shown that one of the makers who had altered and negotiated it had authority to alter it from the other parties to the note, testimony that one of such other parties was seen to indorse several blank notes and leave them with such maker is rightfully admitted · if it tends to impeach the testimony of such indorser in respect to his dealings with, and confidence reposed in such maker;

but testimony of a witness that he had seen blank notes in the possession of the party who had altered and negotiated the note in suit, with what he believed to be the genuine signature of one of the indorsers, is rightfully excluded, as seeking to establish one inference from another.

10. In such an action, where expert testimony has been offered tending to show the. apparent use of a certain ink eradicator in the alteration of the note in suit, testimony tending to show that bottles of such eradicator had been found in the desk of the party charged with having altered the note, is admissible.

11. It is error for the trial court to refuse to allow a witness in such an action to be asked whether he was' ever present in the office of the party charged with altering the note when he used acid in altering any notes, where the plaintiff states that he expects to prove by the witness that he saw this done in the presence of the other parties to the note, although the truth of the proposed statement may seem improbable under the circumstances. In such a case, where the fact is sought to be established by circumstantial evidence, great latitude is often permitted.

12. Wide discretion is given the trial court in respect of the order of proof; and in cases of doubt it is ,better to permit additional evidence to be given in rebuttal although it ought to have been given in chief, where it is clear that no improper advantage has been sought by withholding it and no necessary injury will occur to the opposing party through surprise; *following* Robinson v. Parker, 11 App. D. C. 132.

13. A party to an altered or forged negotiable instrument may bind himself by acknowledging it and promising to pay it, without a new consideration, if the instrument is in the hands of one who had no connection with the forgery, and the promise is not involved in an attempt to compound the felony; but such an acknowledgment or ratification, in order to bind, must be with full knowledge of all the facts.

No. 1140. Submitted January 23, 1902. Decided April 3, 1902.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, entered upon the verdict of a jury in an action upon a promissory note.                              *Reversed.*

STATEMENT OF FACTS.

The action was brought below against the appellees, Charles C. Bryan, Zenas C. Robbins, Henry O. Towles, and

against one Gilbert B. Towles. The declaration was filed November 24, 1899, and was based on a promissory note for $1,000, executed by Gilbert B. Towles and the appellee Bryan, as joint and several makers, dated July 26, 1899, payable to the order of the appellee Robbins, and indorsed by him and by the appellee Henry O. Towles, and after him by Gilbert B. Towles.

It consisted of three counts, in the first of which the defendants were declared against as makers and indorsers of the note; and in the second of which they were declared against as joint makers, with the usual allegations as to the indorsement having been made for the purpose of giving additional credit; the last count being the common counts, with a bill of particulars, consisting of a copy of the note and protest. Gilbert B. Towles did not appear, and a judgment by default was taken against him. The other defendants, the appellees here, pleaded the general issue. On the trial, a verdict was peremptorily directed by the court in favor of the appellees Bryan and Robbins, and the cause was submitted to the jury as to the appellee Henry O. Towles. The jury found in favor of Henry O. Towles. A motion for a new trial having been overruled, judgment was rendered on the verdict in favor of all of the appellees, and from that judgment this appeal was taken.

The further material facts will be found stated in the opinion of the court.

*Messrs. O. B. Hallam, C. A. Keigwin* and *H. A. Heitmuller* for the appellant:

1. On whom was the burden of proof, is, perhaps, a complex question, which may involve another question, as to whether the court or jury should determine it. The record presents several phases as to this. First, the court inspected the note and said it would not pass muster. Then it heard evidence exonerating the holder, and said it was enough, and allowed it to go to the jury. Then it went back to its original position and took it away from the jury.

We contend that the court had no power to pass on this question at all. In 1 Shep. Touchstone, 69, some hundred years ago, the author says, after reciting the various kinds of alterations: " In these cases the matter was anciently used to be tried by the judges upon the view of the deed; but it is now used to be tried by jurors, whether the erasure or other alterations were before the delivery of the deed or not." See also *Ravisies* v. *Alston,* 5 Ala. 301; *Steel* v. *Spencer,* 1 Pet. 552. The question of the date of an alteration, its character, and by whose authority made, is one pre-eminently of fact; and whether the burden be on the one party or the other, it cannot peremptorily be disposed of by the court. *Taylor* v. *Mosely,* 6 Car. & Payne, 273; *Bishop* v. *Chambers,* 1 Moo. & Mal. 116; *Little* v. *Herndon,* 10 Wall. 21. That there is a conflict of authorities on the question as to the burden of proof cannot be gainsaid; but the more numerous and better reasoned are to the effect, either that the presumption is that the alteration was made before execution, or that there is no presumption either way. *Farmers' Loan & Trust Co.* v. *Olson,* 92 Iowa, 771; *Hagan* v. *Merchants Bankers' Ins. Co.,* 46 N. W. Rep. 1114; *Yakima Nat. Bank* v. *Knipe,* 6 Wash. 348. That in case of apparent alteration of instrument no presumption arises against the paper, but the burden is on the defendant to prove or explain the alleged alteration, is also held by the following additional authorities: *Prevost* v. *Gratz,* 6 Wheat.

; *Hanrick* v. *Patrick,* 119 U. S. 172; *Wickes* v. *Caulk,* 5 H. & J. 71; *Bank* v. *Sears,* 4 Gray, 95; *Gooch* v. *Bryant,* 1 Shepl. 386; *Crabtree* v. *Clark,* 7 Shepl. 337; *Milliken* v. *Martin,* 66 Ill. 13; *Stayner* v. *Joyce,* 120 Ind. 99; *Doe* v. *Catamore,* 16 Q. B. 745; *Wilson* v. *Hayes,* 40 Minn. 531; *Franklin* v. *Baker,* 48 Ohio St. 296; *Newman* v. *King,* 54 Ohio St. 273; *Bailey* v. *Taylor,* 11 Conn. 531; *Wolferman* v. *Bell,* 6 Wash. 84; *Kleeb* v. *Baird,* 40 Pac. Rep. 739; *Neil* v. *Case,* 35 Kan. 510; *Beaman* v. *Russell,* 20 Vt. 205; *S. C.,* 49 Am. Dec. 175. And in the case of *Trowell* v. *Castle,* 1 Keble, 21 (1661), it was held that an interlineation, with-

out anything appearing against it, will be presumed to be at the time of the making of the deed and not after.

2. It would seem from the above citations that the burden would be on the makers and not on the holders; but the appellant is not compelled to rely on that; another and less favorable rule may be applied and still he was entitled to go to the jury. It is stated in 2 Am. & Eng. Encyc. of Law (2d ed.), p. 274, as follows: " The view best supported by reason, and the one to which the authorities seem tending, is that the mere fact of an interlineation or erasure appearing in an instrument does not *per se* raise any presumption either for or against the validity of the writing; but that the question when, by whom, and with what intent an alteration was made, is one of fact to be submitted to the jury upon the whole evidence;" and then the text goes on to say that while there may be a measure of duty incumbent on the party offering the instrument, he, in general, makes out a *prima facie* case by proof of the signature " since that is *prima facie* evidence that the whole instrument is the act of the party signing;" and that then the other party may introduce proof to rebut this *prima facie* case, and throw back the burden of accounting for the alteration. Conceding, for argument's sake, that the text states the rule too broadly when it holds proof of the signature to be sufficient, and that something more was necessary to make out a *prima facie* case, the appellant proved all that could be required of him under any reasonable known rule. *Miller* v. *Stark,* 148 Pa. St. 164; *Stough* v. *Ogden,* 68 N. W. Rep. 516 (Neb. 1896). The Supreme Court decisions relied on by the counsel for appellees in the court below, and which will doubtless be offered again here, do not conflict with this rule; one is based upon a proposition stated by that court that it might be that the alteration was made by the holder and, therefore, he must explain it to that extent; and the others are only to the effect that an instruction to the jury as to the signers being released by alteration made after the signatures released them was proper. See upon this general subject, *Bank* v. *Wilson,* 5 App. D. C. 12; *Peugh* v. *Mitchell,* 3 App. D. C. 125.

3. Admitting that there was more necessary than the mere proof of the execution of the note and the fact that it had not been altered since its receipt by the holder,. on the evidence heard, there was enough to go to the jury upon the question as to whether the appellees had signed or indorsed the note in its existing condition or had authorized its issue in that condition.

4. There was such a course of dealing between Gilbert Towles and the appellees as made them responsible for any note with their signatures which he issued. It appears, as before stated, that they were jointly interested in the Gettysburg venture; and that Gilbert Towles was, in a certain sense, their representative; or in other words, that he had, through their consent, the management of financial affairs; that the appellees Bryan and Towles had on several occasions ratified altered notes; and that Robbins had left blank notes with him, etc. In *Rankin* v. *Blackwell,* 2 Johns. 198, testimony was admitted to prove that other notes of the same transaction had been altered. That an unauthorized act must be disavowed immediately is stated in Chitty on Contracts, p. 202, n. 2; 2 Kent Comm. 616; *Vianna* v. *Barclay,* 3 Cow. 281; *Kloch* v. *Richtmeyer,* 13 Johns. 367; *Thomas* v. *Morris,* 8 Cow. 60; *Bell* v. *Cunningham,* 3 Pet. 69; *Delafield* v. *State of Illinois,* 26 Wend. 192; *Veazie* v. *Williams,* 8 How. 134. Authority to fill blanks implies an authority to alter the written words. *Bank* v. *Elwood,* 9 Wall. 544. Proof that defendant had paid other forged bills is proof of ratification and meets the defense of forgery. *Barber* v. *Gingell,* 3 Esp. 69. Proof that the agent had subscribed the name of the defendant in many instances is proof of authority, without showing that principal knew of it. *Neal* v. *Ewing,* 1 Esp. 61; 1 Dan. on Neg. Inst. 290, 359; *Prescott* v. *Flinn,* 9 Bing. 89; *Hammond* v. *Varian,* 54 N. Y. 398; *Beal* v. *Thatcher,* 5 Esp. 194; *Gibson* v. *Hunter,* 2 H. Blackst. 287.

5. The propriety of admitting in evidence the confession of Gilbert B. Towles was objected to and was clearly *res inter alios acta.* Conceding that same statement of his could be admitted, it was not competent even to prove by him had

he been put on the stand, that he had altered any notes other than the one sued on. *Thompson* v. *Mosely,* 5 Car. & P. 571.

*Mr. Walter C. Clephane* for the appellee Henry O. Towles:

1. It appears from an inspection of the note in suit that it has been altered in the following respects: First, in the date; second, in the figures in the upper left-hand corner indicating the amount of the note, some of the figures originally there having been erased and a nought introduced after the original " 100 ;" third, the word " three " before the word " months " has been written over a space in which originally something else appeared; fourth, the word " we " in the promise to pay has been written over a space where the word " I " originally appeared; fifth, the words " jointly and severally " have been inserted; sixth, the amount as written out in the body of the note has been tampered with; seventh, the signatures have been tampered with. All these and other apparent changes were pointed out by the court and by witnesses during the trial of the case below. See Rec., pp. 9, 10, 15, 16, 41. Of course these are material alterations, and would avoid the note as against any party who had executed same before the alterations were made, and who had not assented thereto. *Wood* v. *Steele,* 6 Wall. 80; 30 Stat. L. 797.

2. This being the condition of the note sued upon, and the record disclosing no direct proof as to the time when, person by whom, nor circumstances under which, these alterations were made on this particular note, the burden of proof is upon the party suing upon the note to explain them. 1 Greenl. on Ev., Sec. 564; *Peugh* v. *Mitchell,* 3 App. D. C. 321; 2 Encyc. of Law (2d ed.), 272 *et seq.;* 2 Jones on Ev. *578, *579; 1 Smith's Lead. Cas. 1307–1316; *Hills* v. *Barnes,* 11 N. H. 395; *Paine* v. *Edsell,* 19 Pa. St. 179; *Harris* v. *Bank of Jacksonville,* 1 Am. St. Rep. 209; *Hill* v. *Cooley,* 46 Pa. St. 261; *Priest* v. *Whitacre,* 78 Va.

151; Byles on Bills, 259, and Sharswood's note; 2 Taylor on Ev., Sec. 1819; *Knight* v. *Clement,* 8 Ad. & El. 218. The cases cited in appellant's brief upon this subject, relating to alterations in deeds and kindred contracts, not accompanied by any circumstances of suspicion, do not at all bear upon the present controversy. That in the case of negotiable instruments the doctrine that the burden of proving the circumstances attending the alteration is upon the plaintiff who is the holder of the paper, is confirmed by the statements in 2 Dan. on Neg. Inst., Secs. 1417–1421*a,* and the cases there cited. The two cases decided by this court and cited in appellant's brief, viz.: *Bank* v. *Wilson,* 5 App. D. C. 12, and *Peugh* v. *Mitchell,* 3 App. D. C. 321, do not at all conflict with this rule. See also *Nagle's Estate,* 134 Pa. St. 31 (1890); *United States* v. *Linn,* 1 How. 111, and *Smith* v. *United States,* 2 Wall. 219.

2. It is competent for the court to inspect the note, in the first place, to ascertain whether there were alterations upon it, and scrutinize it closely. 1 Greenl. on Ev., Sec. 564 (16th ed.); 2 Encyc. of Law (2d ed.), 273; *Nagle's Estate,* 134 Pa. St. 31; *Heffner* v. *Wenrich,* 32 Pa. St. 423; *Smith* v. *United States,* 2 Wall. 219.

3. The court was clearly right in instructing the jury that such alterations existed, more especially as proof to that effect had been submitted by the plaintiff, and there was no evidence to the contrary, and, indeed, the evidence on both sides was in perfect accord in the direction of showing conclusively that such alterations existed. *Tillou* v. *Insurance Co.,* 7 Barb. 564; *Clark* v. *Eckstein,* 22 Pa. St. 508.

4. On several different occasions plaintiff's counsel endeavored to introduce testimony with reference to notes not connected with the one in suit, in order to show either that such notes had been executed by some of the defendants or that they had acknowledged the same to be just obligations. It is difficult to perceive under what theory of the law such evidence was admissible. As opposed to its admissibility, see *Harris* v. *Bank of Jacksonville,* 1 Am. St. Rep. 201, 206, 207; *Cohen* v. *Teller,* 93 Pa. St. 127; *Whiteford* v. *Munroe,*

17 Md. 149; *Walters* v. *Munroe,* 17 Md. 150; *Woodruff* v. *Munroe,* 33 Md. 146; *Starr* v. *Yourtee,* 17 Md. 341.

5. Many of the authorities hold that there can be no such thing, even in a civil action, as a ratification of a forgery. *McHugh* v. *County of Schuylkill,* 67 Pa. St. 391; *Shisler* v. *Vandike,* 92 Pa. St. 447; *Brook* v. *Hook,* L. R., 6 Exch. 88. If the evidence in the case at bar which was sought to be introduced had been of statements made by these defendants or transactions with them, brought directly to the attention of the plaintiff and upon the strength of which the plaintiff was led to believe, *prior to the time when he took the note,* that it was good, then it is conceded that the evidence would have been admissible as tending, not to ratify a forgery, but to show that no *forgery* had ever been committed. Under such circumstances, even if the note had been originally fraudulently altered, there might be said to have been a new promise with the holder, based upon a new consideration, viz., the purchase by the holder of the paper. But the only evidence in this case which was excluded and which was offered under this head, was of entirely independent and collateral transactions, not shown to have been brought to the attention of the plaintiff at all. It surely cannot be contended that any of these defendants would be *estopped* by reason of anything which was endeavored to be shown by the plaintiff by means of the evidence which was excluded. Had this evidence consisted of actual promises to pay the very paper in controversy the party promising would not be *estopped* thereby. Mere promises do not constitute an estoppel. *Barry* v. *Kirkland,* 40 L. R. A. 471; 36 L. R. A. 539 note, and cases cited; *Warren* v. *Fant,* 79 Ky. 1. See also *Bennecke* v. *Connecticut Mut. Life Ins. Co.,* 105 U. S. 355; *Combs* v. *Scott,* 12 Allen, 493; *Tucker* v. *Moreland,* 10 Pet. 75, 76; *Western Nat. Bank* v. *Armstrong,* 152 U. S. 346; *Sullivan* v. *Flynn,* 20 D. C. 401; Brandt on Suretys. & Guar., Sec. 333 *et seq.; Bell* v. *Shields,* 19 N. J. L. 93; *Cravens* v. *Gillilan,* 63 Mo. 28; *Whiteford* v. *Munroe,* 17 Md. 149; *Walters* v. *Munroe,* 17 Md. 150; *Woodruff* v. *Munroe,* 33 Md. 146; *Starr* v. *Yourtee,* 17 Md. 341.

6. The record shows that the bottles of Collins' Ink Eradi-cator, introduced in evidence, had been found on the desk of the very man who subsequently stated that he had raised the notes, and the custody of those bottles was accounted for during every moment from the time when they were taken from Gilbert Towles' desk down to the time they were put in evidence in the trial. What objection there could be to this testimony is not apparent and is not stated in the record. The same criticism may be made as to the condition of the record with regard to nearly all of the appellant's exceptions. Such an assignment of error may be properly disregarded. *District of Columbia* v. *Woodbury,* 136 U. S. 450; *Prindle* v. *Campbell,* 18 D. C. 598; *Washington Gas Light Co.* v. *Poore,* 3 App. D. C. 127; *Hazleton* v. *Le Duc,* 10 App. D. C. 379.

7. Witnesses were asked to testify *in rebuttal* whether they saw blank notes indorsed by Mr. Robbins in Gilbert Towles' possession. The plaintiff had unquestionably made this a part of his case in chief, and nothing had been asked by the defendants of any of their witnesses with regard to blank notes. The only allusion to blank notes made during the examination of defendants' witnesses was made by counsel for plaintiff on the *cross-examination* of the defendant Robbins and of the witness Joseph J. Darlington. It is a cardinal rule of evidence that counsel is not permitted to ask witnesses collateral and immaterial questions on cross-examination for the purpose of subsequently contradicting them in rebuttal. This would tend to multiply the issues enormously. 1 Greenl. on Ev. (14th ed.), Secs. 52, 449; *Spencerly* v. *De Willett,* 7 East, 108.

8. If it should seem to the court that some of the testimony might be admissible if proffered at the right time, its exclusion, when offered, is not reversible error, even if this court, had it been the *nisi prius* tribunal, would have admitted it. The order in which the testimony is to be presented is a discretionary matter with the trial court. *Langdon* v. *Evans,* 3 Mack. 1; *Lansburgh* v. *Wimsatt,* 7 App. D. C. 271.

This applies to all of the testimony offered tending to show that Mr. Robbins had indorsed blank notes and left them with Gilbert B. Towles; also to the alleged meeting of the directors of the Gettysburg Hotel and Springs Company in June, 1899; to the testimony offered in rebuttal, which, it was claimed, *might have* shown that the proceeds of the note in suit went to the benefit of the Gettysburg Hotel and Springs Company. It clearly applies to the testimony offered by the witness Smith that he saw Gilbert Towles alter notes in the presence of these defendants, which was distinctly within their proffer while taking their testimony in chief.

The appellees contend that the exclusion of any testimony whatever, pertinent or otherwise, which might have been given by the witness Smith could hardly have injured the appellant. Judgment will not be reversed where it appears that the errors complained of could not have injured the appellant. *Hughes* v. *Heyman,* 4 App. D. C. 444; *Posey* v. *Hanson,* 10 App. D. C. 496.

9. Counsel for the appellees do not contend that the confession of Gilbert Towles as to having committed the forgeries is competent evidence to prove the fact of the forgeries, nor that it would have been admissible at all had not plaintiff's counsel, against the protest and warning of defendants' counsel, fairly forced them to put the confession in evidence. The testimony as to the confession of Gilbert Towles was brought out, not by the defendants, but by the plaintiff himself.

10. No other instruction than one to return a verdict for Robbins and Bryan could have been given as to these defendants. Whether or not the burden of proof shifted from beginning to end of the trial, the law is plain that the burden does rest upon the plaintiff to explain the manifest alterations. Of course if any evidence had been introduced tending to show that the alterations had been made prior to the defendants' names being placed upon the paper, such evidence should have gone to the jury. But with regard to these defendants, there was not a line of evidence from beginning to end of the case which could in any manner tend

to show any such condition of things or in the slightest degree explain the suspicious appearance of the paper. The plaintiff, having failed to carry his burden, has nothing to complain of in the action of the court in that particular. The court is not bound to submit a question to the jury unless there is evidence upon which they may properly find a verdict. *Bank of United States* v. *Corcoran,* 2 Pet. 121; *Danzig* v. *Saks,* 20 D. C. 177; *Howes* v. *District of Columbia,* 2 App. D. C. 188; *Prigg* v. *Lansburgh,* 5 App. D. C. 30.

12. It is extremely doubtful whether the case should have been permitted to go to the jury even as to the defendant Henry O. Towles, in view of the decisions above referred to on the subject of ratification. The only way in which the case as to the defendant Henry O. Towles differed from that as against the other defendants was, that as to him there was testimony to the effect that after the note matured it had been presented to him, and that he said "the note was all right, and that he was making arrangements to pay it." But this was before Henry O. Towles *had any suspicion that the note had been altered.* If the doctrine announced by the Court of Appeals of Maryland in the two cases above cited of *Woodruff* v. *Munroe,* 33 Md. 146, and *Starr* v. *Yourtee,* 17 Md. 341, is correct (and it is respectfully submitted that it is) then this evidence should not have been admitted at all, and being inadmissible and incompetent to hold this defendant, there was no more reason for submitting it to the jury as to him than as to the other defendants. In any event, the plaintiff cannot complain of its submission to the jury as against him, and the authorities heretofore cited from the Supreme Court of the United States conclusively show that the prayers granted on his behalf correctly stated the law.

*Mr. A. S. Worthington* for the appellee Zenas C. Robbins.

*Messrs. F. P. B. Sands* and *Brandenburg & Brandenburg* for the appellee Charles C. Bryan.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. This suit was begun by the appellant, John Ofenstein, as indorsee and holder for value, against Charles C. Bryan, Gilbert B. Towles, Henry O. Towles, and Zenas C. Robbins, upon the following note:

$1,000.　　　　　　WASHINGTON, D. C., *July* 26, 1899.

Three months after date we, jointly and severally, promise to pay to the order of Zenas C. Robbins one thousand dollars at the Lincoln National Bank.

Value received, with interest, at the rate of 6 per cent. per annum, until paid.

　　　　　(Signed)　　　　　G. B. TOWLES,
　　　　　　"　　　　　　　C. C. BRYAN,
　　　　　　　　　　　　　　1413 N. Y. Ave.

(20c. int. rev. stamps affixed.)

The note bears the indorsements of Zenas C. Robbins, Henry O. Towles, and G. B. Towles. It is one of a number of notes alleged to have been negotiated, after material alterations therein, by Gilbert B. Towles whose conviction under an indictment for the forgery of one of them, has recently been affirmed. *Towles* v. *United States,* present term [19 App. D. C. 471].

The declaration is in the ordinary form. The defendants — Gilbert B. Towles excepted — appeared with separate pleas of *non assumpsit, nil debet,* and special denials of execution or indorsement.

2. The general bill of exceptions is a lengthy document, involves many minor points of exception, and is of such intricate construction that it is difficult to extract from it, with any degree of certainty, the manner in which some of the controlling questions were actually presented and determined. Instead of undertaking to give the entire history of the case and proceedings on the trial, as narrated in the bill of exceptions, which would occupy great, and not apparently necessary space, we shall content ourselves with

taking up the questions which we conceive are important to a final disposition, in their natural order, stating such of the essential facts bearing on these as we have been able to extract with reasonable certainty from the general mass.

3. Preliminary to the offer to introduce the note, plaintiff offered two witnesses tending to prove the genuineness of each signature and indorsement of the note. One of these admitted that the word " we," in the clause " we promise to pay," was somewhat blurred and " mixed up;" and apparently changed from " I;" that the words " jointly and severally " were interlined and so blurred that he would not undertake to say who wrote them, but thought Gilbert B. Towles did. Plaintiff having stated that he obtained the note, about the day of its date, from Samuel H. Walker, one of the foregoing witnesses, offered to read it to the jury. Defendants objected on the ground of material and suspicious alterations, apparent on the face of the note, which should first be explained.

The court after inspection of the note sustained the objection on the following grounds substantially: It is apparent that the note is not all in the same handwriting, there appears to be a change in the date; the first signature in order — G. B. Towles — seems to have been signed after that of C. C. Bryan; there seems to be a discrepancy in the " three months " and in the amount. Called upon by counsel for plaintiff for further specification, the court said that he " found from the inspection aforesaid, alterations to exist in the date of the note; in its amount; the writing over the word ' I ' of ' we;' the insertion of the words ' jointly and severally;' the difference in ink; the peculiar look of certain names, the body seeming to be in the same ink that the second maker (Bryan) signed with." (It may be added here, that at a subsequent stage of the case, an expert in handwriting testified, pointing out in detail many indications that the note had been tampered with; among these, indications that the amount had been erased by the use of acid and another written, the acid giving the note a yellow stain. Our own view upon inspection of the note agrees generally with that

of the court below.)    The exception taken to the exclusion
of the note is the basis of the first error assigned.

There is a great mass of conflicting opinions and decisions
in respect of the question — in the varying phases of its
occurrence:   Upon whom lies the duty of explanation, and
what is the measure of its discharge, when a negotiable in-
strument, that has apparently been altered in a material
respect, is offered in evidence by one claiming under it?

Without spending time in an unnecessary review of these
decisions, we think it sufficient to say, that, in our judgment,
the weight of authority as well as reason supports the propo-
sition, that, in such case, where the alteration is material,
and such as reasonably to excite suspicion, it is incumbent
upon the party offering it in support of his claim thereunder,
to give some evidence tending to explain its condition.   This
proposition has the support of Greenleaf and Wharton, and
is said by the latter to embody the doctrine of the Roman
law.   1 Greenl. Ev., Sec. 564; 1 Whart. Ev., Sec. 621.
And in at least two decisions it has been approved by the
Supreme Court of the United States.   *United States* v. *Linn,*
1 How. 104, 111; *Smith* v. *United States,* 2 Wall. 219,
232, 233.  We would content ourselves with citing those cases
alone, as settling the law in this jurisdiction, but for the con-
tention that a different doctrine has been, or would seem to
have been enounced in several later decisions.   Among these
are *Little* v. *Herndon,* 10 Wall. 26, 31; *Hanrick* v. *Patrick,*
119 U. S. 156, 171, 172; *Sturm* v. *Boker,* 150 U. S. 312,
340.   In *Little* v. *Herndon,* it is true that Mr. Justice
Nelson did say, in delivering the opinion of the court:  " In
the absence of any proof on the subject the presumption is
that the correction was made before the execution of the
deed."   And it is also true that the same thing was said,
substantially, in *Hanrick* v. *Patrick,* with the citation of
*Little* v. *Herndon.*   No mention was made of the earlier
cases, and the question, being a minor one as stated in *Little*
v. *Herndon,* and wholly immaterial under the facts proved
in *Hanrick* v. *Patrick,* given scant mention.   In *Hanrick* v.
*Patrick* a deed was offered in proving title.   It showed upon

its face that the name of the grantee, Elizabeth O'Brien, had been scratched so as to read Eliza O'Brien.

The court overruled the objections to the introduction of the deed in evidence, but before reading it the party offered evidence of the genuineness of the signature of the subscribing witness, and proved that Elizabeth and Eliza O'Brien were one and the same person, and also proved that the deed was made as a gift to Eliza O'Brien. The Supreme Court, before the allusion to *Little* v. *Herndon,* had declared the admissibility of the deed upon the supporting proof, saying: " The only erasure appearing, being a change from one name to the other, was sufficiently explained by the proof of identity."

It must be noted, moreover, that the instruments in those cases were deeds. Now, some of the decisions which apply the rule of the presumption of innocence to the producer of a deed, deny its application in the case of negotiable instruments. 1 Whart. Ev., Sec. 629. As has been said by the Supreme Court of Pennsylvania: "As a general rule the law presumes in favor of innocence, but this presumption of innocence does not extend to the alteration of negotiable instruments. He who takes a blemished bill or note, takes it with all its imperfections on its head. He becomes sponsor for them, and though he acts honestly he acts negligently. But the law presumes against negligence as a degree of culpability; and it presumes that he had not only satisfied himself of the innocence of the transaction, but that he had provided himself with the proofs of it, to meet a scrutiny he had reason to expect." *Estate of Nagle,* 134 Pa. St. 31, 44.

But whilst it may be conceded that there are stronger reasons for imposing the burden of explanation upon one who offers a suspiciously altered negotiable instrument in evidence, than in case of a deed, because of essential differences in the purposes and uses of such instruments, and of the usual formal execution of the latter with attesting witnesses, we are not to be understood as expressing the opinion that, in case of the palpable and suspicious alteration of a deed the burden of explanation ought not likewise to be cast

upon the one who, claiming under it, offers it in evidence. *Sturm* v. *Boker, supra,* is not in point. It was a suit in equity involving various matters of account between the parties growing out of consignments of goods for sale, and collections of insurance thereon, etc. Two important exhibits were filed by the plaintiff, consisting of memoranda relating to the shipping of goods, and insurance thereon, over the signatures of the defendants. Defendants first declared the signatures forgeries; they afterwards admitted their genuineness, but declared that the overwritten memoranda were forged. Discussing the point, the court said: "A great deal of proof was taken to establish this contention, but it fails, in our opinion, to show that these documents were forgeries. The signature being genuine, the burden of proof was clearly upon the defendants to establish that the written part above the signatures was forged." 150 U. S. 340.

The last sentence quoted is claimed as authorizing the admission of the note in this case upon the formal proof of the signatures, and as casting the burden of proof upon the defendants to show that the notes had been altered after signing and without their consent. It is impossible, however, to conceive that the court meant more than to state the simple rule of daily practice, namely, that an executed instrument without blemish is established *prima facie* by formal proof of execution.

This formal proof of execution is the condition of the admissibility of all instruments of whatsoever nature that may be offered in evidence. Where, however, the vice of the instrument is not in the signature but in the suspicious appearance of erasures and alterations in the writing above the signature, this rule of admissibility fails with the reason for its existence, and is succeeded by the rule hereinabove stated, which then becomes applicable.

The court was, therefore, right in rejecting the note without some proof in explanation of its suspicious appearance.

4. Another error is now to be considered. Though late in the order of its assignment it properly follows the one just disposed of.

Immediately after the record of the proceedings above discussed, the bill of exceptions contains the following recital:

"And thereupon the plaintiff was recalled as a witness and his testimony conduced to show that he received the note sued on from the witness Walker on or about the 26th day of July, 1899, along with $218 in money in exchange for another note in the same form for $1,200, dated April 26, 1899, and due in three months; that he merely looked at the names on it and put it in his safe; that no change was made in it after he received it and he noticed no discoloration in it, and he delivered it back to Mr. Walker for collection shortly before it fell due.

"And thereupon the plaintiff recalled the witness Walker, whose testimony conduced to show that on the date of the note sued on there was a note for $1,200 due by the same parties, and that Gilbert B. Towles then brought him the note in suit and gave it to him with a check for $218.00; that the witness had been a notary public for twenty or twenty-five years, and had been connected with the National Capital Bank for twelve years and was familiar with commercial paper, and he examined it with his eyeglasses; the signatures were apparently the same as before, and there was no apparent discoloration; that his attention was then not called to anything except the bad writing in the words ' jointly and severally,' which now appear to be a little faded, but then was more of the same appearance as the balance of the note; that the note in suit was identical in every way on the face and the signatures with the previous note for $1,200 before referred to.

" That he delivered it the next day to the plaintiff and never saw it again until the plaintiff handed it back to him for collection a few days before its maturity, and that he had duly protested as a notary public this note and sent proper notices, and that on two different occasions within a month after the protest he had seen the defendant Henry O. Towles and exhibited to him the note sued on and said Towles then inspected the note face and back and said the note was all right, and he was making arrangements to pay it."

Certain other evidence relating to the business relations of all the parties in what was called the Gettysburg Company, was then offered, some of which was excluded. The point made on the exclusion will be passed for later consideration. The defendants introduced the expert testimony before referred to. Bryan testified that his signature was not genuine; that he had signed only notes for small amounts for Gilbert Towles save one (consolidated) for $1,000; he admitted the receipt of notices of protest during the fall of 1899 of paper of Gilbert B. Towles — could not remember as to this particular note — and that he always sent them to Gilbert B. Towles. A paper was introduced signed by witness, Gilbert B. Towles, and H. O. Towles, dated August 8, 1898, acknowledging to the Lincoln National Bank that a note of that date with an erasure and change as to date, was correct and bore their genuine signatures; and would be substituted with a new note as soon as the indorsement of Zenas C. Robbins could be secured, he then being absent. The signatures to this paper were admitted. Henry O. Towles denied his own indorsement of the note in the condition as now appears, and denied seeing the note in Walker's hands as well as a promise to pay it, and further stated that he had no suspicion that alterations had been made in notes until after Gilbert Towles' confessions, December 11 or 12, 1899. His cross-examination was upon his connection with the Gettysburg Company, for which Gilbert Towles was raising money by notes. He stated that in September, 1898, he took a note at the request of his brother Gilbert to the Columbia Bank in order to get an extension of thirty days on a similar note for $2,500. He was in a hurry and did not discover that the note showed an alteration on its face. His brother had perpetrated a fraud upon him. For these reasons he had never denied his liability on said note. Robbins, whilst admitting the indorsement, for Gilbert B. Towles, of many notes in 1899, a memorandum of which he produced, denied that he had ever indorsed a note of the date and amount of the note sued upon. He was cross-examined at great length, and some contradictions shown in his statements; his de-

nial of an interest in the Gettysburg speculation was contradicted by written evidence of assignments made to him by Gilbert B. Towles. This witness was 92 years of age. The confession of Gilbert B. Towles in December, 1899, was first brought out by plaintiff in the cross-examination of Henry O. Towles, in which he also stated that all the money obtained by him on notes discounted had not been used in paying obligations of the Gettysburg Company. This evidence occupies great space in the bill of exceptions; but the foregoing condensation is sufficient for the purposes of the discussion. Plaintiff was also permitted, in rebuttal, to offer the evidence of a witness, that in the early part of July, 1899, he saw Robbins indorse three or four blank notes and leave them with Gilbert B. Towles for the purpose of renewing and taking care of notes in bank. At the conclusion of all of the testimony the court, upon motion of the defendants, instructed the jury to find a verdict for the defendants Bryan and Robbins, because the plaintiff had not introduced proof sufficient to sustain the burden of proof cast upon him; so the bill of exceptions recites.

We are constrained to hold that the court erred in not submitting the question of execution, and of alteration after execution, to the jury, with an appropriate charge on the burden of proof throughout.

The plaintiff's evidence was positive that the note had undergone no alteration after its receipt by him, and he and Walker, who presented the note for Gilbert B. Towles, testified that there was nothing suspicious in its appearance when received. This proof has been held sufficient to warrant the introduction of the note, and we think rightly so. *Miller* v. *Stark,* 148 Pa. St. 164; *Stough* v. *Ogden,* 68 N. W. Rep. 516 (Nebraska, Oct. 1896). Pennsylvania and Nebraska are both States which also maintain the rule that a note showing a suspicious alteration on its face is not admissible in evidence without some explanatory proof. *Nesbitt* v. *Turner,* 150 Pa. St. 429, 437; *McHale* v. *McDonnell,* 175 Pa. St. 632, 643; *Johnson* v. *Bank,* 28 Neb. 792.

No matter how improbable this evidence of the condition of the note may have appeared to the learned justice who presided on the trial, with the note itself under his eye, and in the light of the established as well as confessed fact of Gilbert Towles' criminal conduct in the matter of altering and raising similar notes, it nevertheless raised an issue of fact to be submitted to the jury. Each defendant's personal testimony related solely to his own defense, and considering the facts brought out in cross-examination and other conditions of evidence, heretofore briefly stated, we cannot say that there was nothing whatever in the evidence that involved the credibility of the witnesses. The preliminary question, whether, on the face of the note, the alteration is material and so plainly suspicious as to warrant the requirement of some explanatory evidence as the condition of its admission, is for the determination of the court. But when admitted after some such proof, the question whether the alteration was made before or after delivery, or with or without the knowledge or consent of the several signers and indorsers, is one that must be submitted to the jury. *Steele* v. *Spencer,* 1 Pet. 552, 563.

It is scarcely necessary to add, that notwithstanding the evidence of plaintiff of the failure to observe any blemish or other circumstance of suspicion on the face of the note when received, the defendants cannot be bound, though their signatures may have been written with their own hands, if the note was, in fact, altered by Gilbert B. Towles, in a material particular, thereafter and without their knowledge and consent. It would be none the less a forgery. *Wood* v. *Steele,* 6 Wall. 80; *Angle* v. *N. W. Mut. Life Ins. Co.,* 92 U. S. 330, 341.

5. As the case must be remanded for a new trial, such of the remaining questions raised by the assignments of error as may re-occur, will be briefly considered:

(1) The court was right in holding that the facts concerning the Gettysburg Company's purchase, its embarrassed condition, the interests of all the defendants therein, and the execution of notes for negotiation by Gilbert B. Towles for

the needs of the company, were admissible only as a foundation for other evidence that might be introduced on behalf of the plaintiff, tending to show that authority had been given to Gilbert B. Towles to erase the dates and amounts of former notes executed by them, substitute them at his will, and then again offer them for discount; or that with full knowledge of the facts they had admitted the genuineness of the note, and promised to pay it to an innocent holder.

That other altered notes, not part of the transaction with the plaintiff, may have been paid by the parties with knowlelge of their forgery, is not a relevant fact, much less can it operate as an estoppel to deny the authority to alter the note sued on. *Cohen* v. *Teller,* 93 Pa. St. 123, 127, 128; *Whiteford* v. *Munroe,* 17 Md. 135, 142, 149; *Walters* v. *Munroe,* 17 Md. 150, 153; *Woodruff* v. *Munroe,* 33 Md. 146, 159.

(2) The fact that the defendants attended a meeting of creditors of the Gettysburg Company and holders of some of the forged notes that had been altered by Gilbert B. Towles, with a view to taking steps to secure that indebtedness upon condition of extensions and so forth, was, for the same reasons, irrelevant. The only ground upon which it could become relevant, would be as necessary introduction to admissions made in the course thereof by one or all of the defendants, of the authority of Gilbert B. Towles to erase, alter and then reissue notes that had formerly been executed by them, or that his erasures and alterations were made with their knowledge and consent. The fact that they may have contemplated arrangements by which all the obligations of either kind might be secured, extended, and thereafter paid is not of itself relevant. See cases last above cited.

(3) The confessions of Gilbert B. Towles were first brought out by the plaintiff on cross-examination.

They would be clearly inadmissible on behalf of the defendants, unless as connected with the general meeting of creditors, should that become admissible under the conditions before stated.

(4) The testimony of one E. J. Smith to the effect that he had seen Robbins indorse several blank notes and leave

them with Gilbert B. Towles in June or July, 1899, was rightly admitted as tending to impeach the evidence of Robbins in respect of his dealings with, and confidence reposed in Towles; but it could have no possible relevancy to the case against the other defendants — Bryan and Henry O. Towles. Even if Robbins did indorse blank notes and leave them with Gilbert B. Towles to fill up at his discretion, still, whilst said Towles might have completely bound him by filling the blanks for any amount and negotiating it to an innocent holder, his erasure or interlienation of material words so as to change the terms of words written or printed in the blank form, would be fatal to its validity. *Wood* v. *Steele,* 6 Wall. 80; *Angle* v. *N. W. Mutual Life Ins. Co.,* 92 U. S. 330, 340.

And for stronger reason, the same result would follow if, after having filled the blanks in such a note and used it, he should subsequently have recovered it, erased material words and substituted and interlined others.

(5) The testimony of E. L. Hawks tending to show that he had seen blank notes in the possession of Gilbert B. Towles with what he believed to be the genuine signature of Robbins indorsed thereon, was properly excluded. As he did not see Robbins indorse the notes, as Smith claims to have done, it could not be proper impeachment of Robbins. It sought to establish one inference from another.

(6) The evidence tending to show that bottles of " Collins' Ink Eradicator " had been found in the desk of Gilbert B. Towles was made relevant by the expert evidence in regard to the apparent use of that preparation upon the note in controversy.

(7) The last point to be considered in this connection is thus stated in the bill of exceptions. In the course of the examination of the witness E. J. Smith, he was asked " Whether he was ever present in Gilbert Towles' office when he used acid in altering any notes, the plaintiff avowing that he expected to prove by the witness that he saw this done in the presence of Robbins and Henry O. Towles and possibly Mr. Bryan." This was excluded on the objection that it was immaterial and not proper rebuttal testimony.

This testimony, we are constrained to hold, was competent. That the truth of the proposed statement might seem improbable under all the circumstances, is not a question of law, and it should go to the jury for all that they may consider it worth. In a case like this where a fact is sought to be established by circumstantial evidence, great latitude is often permitted. *Holmes* v. *Goldsmith,* 147 U. S. 150, 164.

And we are not prepared to say that the fact here offered to be proved is entirely too remote.

As regards the objection that the evidence was not properly in rebuttal, it is only necessary to say that a wide discretion is given the trial court in respect of the order of proof, and in cases of doubt it is better to permit additional evidence, though it ought to have been given in chief, where it is clear that no improper advantage has been sought by withholding it and no necessary injury would occur to the opposing party through surprise. See *Robinson* v. *Parker,* 11 App. D. C. 132, 138; *Throckmorton* v. *Holt,* 180 U. S. 552, 564.

(6) The last assignment of error relates to the instructions given to the jury in submitting the case as to Henry O. Towles' liability. The case against him differed from that against his co-defendants in that there was evidence tending to show his acknowledgment of the validity of the note and a promise to pay it, with request for indulgence.

The following instruction was given at the request of the plaintiff.

6. If the jury believed from the evidence that the defendant Henry O. Towles, after the note matured, and after an inspection thereof, and with knowledge of its then condition, recognized and promised to pay or asked for indulgence thereon, then any alteration previously made will not prevent a recovery against him.

On behalf of said Towles two additional instructions were given to which plaintiff excepted. These are substantially to the effect:

(1) That an acknowledgment of liability on the note, to be binding, must have been made with full knowledge that it had been altered. (2) That the alterations being material, the verdict should be for defendant unless the plaintiff has

shown by a fair preponderance of the evidence that the alterations were made before he indorsed the note, or that if made afterwards, the defendant with full knowledge of said alterations ratified the same.

Whilst there is a conflict of authority on the point whether one can bind himself by the acknowledgment of an altered or forged instrument and a promise to pay the same without a new consideration, or some special ground of estoppel, we agree with the trial court that he can do so, provided the paper is in the hands of one who had no connection with the forgery, and the promise is not involved in an attempt to compound the felony. *Bank* v. *Crofts,* 4 Allen, 447, 454; *Hefner* v. *Vandolah,* 62 Ill. 483; 1 Am. & Eng. Encyc. of Law (2d ed.), 1187; *McKenzie* v. *British Linen Co.,* L. R., 6 App. Cas. 82, 99.

The court was also right in charging the jury that such acknowledgment or ratification, in order to bind, must be with full knowledge of all the facts. *Tucker* v. *Moreland,* 10 Pet. 58, 75; 1 Am. & Eng. Encyc. of Law, 1189.

Without further discussion of possible questions that may arise on a new trial, the judgment will be reversed with costs for the error pointed out, and the cause remanded with directions to grant a new trial. It is so ordered. *Reversed.*